# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 23, 2021      Decided December 7, 2021

No. 20-1104

LOUISIANA PUBLIC SERVICE COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ARKANSAS PUBLIC SERVICE COMMISSION AND ENTERGY
SERVICES, LLC,
INTERVENORS

———

Consolidated with 20-1356

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Michael R. Fontham* argued the cause for petitioner. With
him on the briefs were *Dana M. Shelton* and *Justin A. Swaim*.

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the briefs were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Dennis Lane, Glen L. Ortman, Paul R. Hightower, Sanford I. Weisburst, Gregory W. Camet, Mark Strain, Jay Breedveld, Marnie Ann McCormick, Carl R. Hennies,* and *Zackary R. Clark* were on the brief for intervenors Entergy Services, LLC, and Arkansas Public Service Commission in support of respondent. *Marie Denyse Zosa* entered an appearance.

Before: HENDERSON and JACKSON, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, Senior Circuit Judge:  The Louisiana Public Service Commission ("the Louisiana Commission") petitions for review of two orders of the Federal Energy Regulatory Commission ("FERC").  *Opinion No. 565*, 165 FERC ¶ 61,022 (Oct. 18, 2018), *reh'g denied*, 169 FERC ¶ 61,179 (Dec. 3, 2019); *Order Denying Complaint*, 169 FERC ¶ 61,113 (Nov. 21, 2019), *Order Addressing Arguments Raised on Reh'g*, 172 FERC ¶ 61,056 (July 16, 2020).  The Louisiana Commission objects that FERC acted arbitrarily and capriciously by excluding certain transactions from the calculation of a remedy and by denying a subsequent complaint relating to those same transactions.  Finding no merit to these objections, we deny the petitions for review.

## I.      Background

From 1982 to 2016, six utilities—Entergy Arkansas, Inc.; Entergy Louisiana, L.L.C.; Entergy Mississippi, Inc.; Entergy New Orleans, L.L.C.; Entergy Texas, Inc.; and Entergy Gulf States, L.L.C.—operated according to the Entergy System Agreement ("the System Agreement"), which required the six utilities to plan and operate their facilities as a single electric system. FERC mandated that production costs among the utilities be roughly equal. *Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 384 (D.C. Cir. 2008). The System Agreement "has been a feature of many cases before this Court." *Council of New Orleans v. FERC*, 692 F.3d 172, 174 (D.C. Cir. 2012); *see, e.g.*, *Arkansas Pub. Serv. Comm'n v. FERC*, 712 F. App'x 3, 4 (D.C. Cir. 2018); *Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d at 383; *Louisiana Pub. Serv. Comm'n v. FERC*, 174 F.3d 218, 220 (D.C. Cir. 1999).

Relevant to this case, the System Agreement includes provisions concerning excess capacity held by any one utility. Section 30.03 of the System Agreement, entitled "Allocation of Energy," establishes the procedure for allocating low-cost energy. The lowest cost energy available to each utility must first be allocated to the native load of that utility. The term "native load" refers to the customers that each utility is required to serve under franchise or long-term contract. Only then can it be made available to supply the requirements of other Companies' loads. Unused, higher-cost energy may then be sold to third parties.

In 2009, the Louisiana Commission filed a complaint ("the 2009 Complaint") alleging that between 2000 and 2009, Entergy Arkansas was selling low-cost energy to off-system third parties in violation of the System Agreement. According to the Louisiana Commission, the practice of selling low-cost

energy to third parties before fulfilling the requirements of the system violated the System Agreement. Review of this claim proceeded in three phases: Phase 1 determined the existence of any liability; Phase 2 determined the proper method for calculating damages; and Phase 3 reviewed the damage calculation for accuracy.

In Phase 1, FERC held that individual utilities are permitted to make off-system sales of energy so long as those sales comply with the System Agreement. *Opinion No. 521*, 139 FERC ¶ 61,240 (June 21, 2012), *reh'g denied in part and granted in part*, *Opinion 521-A*, 155 FERC ¶ 61,064 (Apr. 21, 2016). When an individual utility makes off-system sales, they are known as opportunity sales and are governed by Section 30.04 of the System Agreement entitled "Energy for Sales to Others." Sales made by the System, rather than by an individual utility, for the System's collective benefit are known as Joint Account Sales and are governed by Section 4.05 of the System Agreement.

Despite finding that that Entergy Arkansas did have the right under the System Agreement to make opportunity sales, FERC held that Entergy Arkansas still violated the System Agreement because it accounted for those sales as part of its native load under Section 30.03 of the System Agreement rather than as sales to others under Section 30.04. In sum, Entergy Arkansas was selling low-cost energy to third parties rather than giving the other utilities in the System an opportunity to utilize that low-cost energy. FERC ordered that Entergy Arkansas make payments to the other utilities in the System to refund their losses resulting from the violation.

FERC's distinguishing between Joint Account Sales under Section 4.05 and opportunity sales under Section 30.04 was reviewed and upheld as reasonable in *Entergy Services, Inc. v.*

*FERC*, No. 17-1251, 2021 WL 3082798, *5 (D.C. Cir. July 13, 2021) (per curiam).

In Phase 2 of the litigation, FERC determined the method for calculating the damages owed by Entergy Arkansas. *Opinion No. 548*, 155 FERC ¶ 61,056 (Apr. 21, 2016), *reh'g denied*, *Opinion No. 548-A*, 161 FERC ¶ 61,171 (Nov. 16, 2017). FERC ordered a "full re-allocation using the [Intra-System Bill], to determine how the system would have looked had Entergy properly applied the System Agreement . . . ." The method selected for calculating damages is not at issue in this petition.

In Phase 3, an Administrative Law Judge ("ALJ") was overseeing the calculation of damages by Entergy Arkansas. *Phase III Initial Decision*, 160 FERC ¶ 63,009 (July 27, 2017). Before the ALJ, Entergy Arkansas identified a subset of the sales in question made from January through September 2000 ("the Grand Gulf Sales"), asserting that they should not be included in the damage calculation. According to Entergy Arkansas, the Grand Gulf Sales, unlike the other sales in dispute, were accounted for as Joint Account Sales under Section 4.05.

The ALJ rejected the argument that the Grand Gulf Sales should be excluded from the damage calculation despite their differences from the other sales. Upon review, FERC reversed the decision of the ALJ, finding that the Grand Gulf Sales, unlike the other sales, were accounted for as Joint Account Sales and therefore should not be included in the damage calculation. FERC distinguished the Grand Gulf Sales from the other opportunity sales from 2000 through 2009 by finding that the Grand Gulf Sales, unlike the other opportunity sales, were not improperly allocated under section 30.03 because Joint Account Sales are governed by Section 4.05.

FERC went on to find that any determination of whether the Grand Gulf Sales were *properly* accounted for as Joint Account Sales was beyond the scope of the proceeding, which was to remedy the damages caused by the opportunity sales of Entergy Arkansas. FERC rejected the Louisiana Commission's argument that Entergy Arkansas ought to be estopped from asserting that the Grand Gulf Sales were Joint Account Sales or that this was an improper collateral attack on earlier FERC opinions. FERC noted that the Louisiana Commission could file an additional complaint to address the issue of whether the Grand Gulf Sales were properly accounted for as Joint Account Sales. FERC reaffirmed these holdings upon the Louisiana Commission's request for rehearing.

In response to FERC's orders, the Louisiana Commission petitioned this court for review of FERC's decision regarding the Grand Gulf Sales. Contemporaneously, the Louisiana Commission filed a new complaint ("the 2019 Complaint"). The Louisiana Commission alleged that the Grand Gulf Sales, while appropriately accounted for under Section 4.05 of the agreement, were *improperly* calculated under that Section and that the other utilities of the System were not properly compensated from the revenues of those sales.

At that point in time, the litigation surrounding the Grand Gulf Sales had outlived the Entergy System itself. Entergy Arkansas withdrew from the System Agreement in 2013. The remaining utilities and their respective regulators—including the Louisiana Commission—formally terminated the System Agreement at the end of 2015 by entering into the Settlement Agreement.

In response to the 2019 Complaint, Entergy Services, LLC, moved FERC to dismiss the Complaint because the

Louisiana Commission had waived its right to bring this claim in the Settlement Agreement. FERC agreed with Entergy Services that the 2019 Complaint is barred by the Settlement Agreement and denied the Complaint. *Order Denying Complaint*, 169 FERC ¶ 61,113 (Nov. 21, 2019), *Order Addressing Arguments Raised on Rehearing*, 172 FERC ¶ 61,056 (July 16, 2020). The Louisiana Commission timely petitioned this court to review FERC's Order Denying the 2019 Complaint.

We will set aside a decision of FERC if it is arbitrary, capricious, or otherwise contrary to law. *Louisiana Pub. Serv. Comm'n v. FERC*, 482 F.3d 510, 517 (D.C. Cir. 2007). Its factual determinations must be supported by substantial evidence. 16 U.S.C. § 825l(b).

## II.     The Grand Gulf Sales

The Louisiana Commission first contends that FERC's exclusion of the Grand Gulf Sales from the damage calculation was an irrational change of position. Under the arbitrary and capricious standard, FERC is permitted to change its position, but it must provide a reasoned explanation before departing from prior rulings. *Louisiana Pub. Serv. Comm'n v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999). According to the Louisiana Commission, FERC previously defined the sales at issue to include the Grand Gulf Sales, and its ultimate decision to exclude the Grand Gulf Sales must meet the standards required for a change of agency position.

The Louisiana Commission is referring to FERC's creation of a defined term: "Opportunity Sales" (not to be confused with generic, lower-case "opportunity sales" governed by Section 30.04 of the System Agreement). FERC defined the capitalized term "Opportunity Sales" to mean "the

disputed off-system sales of energy by Entergy Arkansas to third-party power marketers and others that are not members of the System Agreement for its shareholders' behalf from 2000 through 2009." *Opinion No. 521*, ¶ 2 n.5. This term was defined and used throughout several FERC orders in the Entergy Arkansas litigation, but that does not turn FERC's later decision regarding the Grand Gulf Sales into a reversal of position.

FERC's definition of Opportunity Sales is a definition of what sales were in dispute. No more; no less. In its use of the term, FERC never made a finding about whether each sale was an opportunity sale or a Joint Account Sale. FERC's findings were limited to the fact that there were sales between 2000 and 2009 that violated the System Agreement because Entergy Arkansas allocated those sales to its native load under Section 30.03 rather than accounting for them as opportunity sales under Section 30.04.

FERC's finding regarding the Opportunity Sales was only that there were sales at issue between 2000 and 2009 that violated the System Agreement and that the extent of the violation would be determined by re-calculating the Intra-System Bill. FERC never found that the Grand Gulf Sales or any other specific sales included in the Opportunity Sales were a violation of the System Agreement. The Louisiana Commission's argument that this is a change of position falls flat. There cannot be a change of position when no position was taken in the first place. This was an initial determination.

The Louisiana Commission then contends that FERC's finding that the Grand Gulf Sales should be excluded from the damage calculation was not supported by a rational explanation. If an agency does not provide a rational explanation for its action based on the relevant data, then that

action is arbitrary and capricious. 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

In this case, FERC explained that Phase 3 of the proceedings should be focused on violations of Section 30.03 because FERC's findings in Phase 1 concerned Entergy Arkansas treating third-party sales as part of their native load under that section. The allegations regarding the Grand Gulf Sales do not concern Section 30.03 because those sales were always treated as Joint Account Sales and therefore never treated as part of Entergy Arkansas's native load. This explanation is more than rational and entirely within reason.

In response, the Louisiana Commission asserts that FERC cited to no evidence in its determination that the Grand Gulf Sales were initially accounted for as Joint Account Sales, but this is not accurate. A factual determination such as this one must be supported by substantial evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). The substantial evidence standard "can be satisfied by something less than a preponderance of the evidence." *Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 395 (D.C. Cir. 2008) (quoting *FPL Energy Main Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir 2002)).

The Louisiana Commission's own witness conceded on the record that the Grand Gulf Sales were always classified by Entergy as Joint Account Sales. In his testimony about why the Grand Gulf Sales should be remedied in the current proceeding, the witness acknowledged that the Grand Gulf Sales were not a violation of Section 30.03 and instead asserted that they were a violation of Section 30.04. This is the same

justification adopted by FERC in its ruling that the Grand Gulf Sales were outside the scope of the proceeding. Certainly, this satisfies the low bar of the substantial evidence standard.

The Louisiana Commission's argument that FERC should have remedied the Grand Gulf Sales in the same proceeding also falls short. FERC reasonably determined that the violations being remedied in this proceeding were opportunity sales that were disguised as native load to funnel money to Entergy Arkansas shareholders. The Louisiana Commission's contention that the Grand Gulf Sales caused the same kind of harm because they were not properly accounted for as Joint Account Sales is unpersuasive. FERC "enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures . . . ." *Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230 (1991) (citing *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978)). This case even resulted from an earlier decision similar to this one when Entergy Arkansas's contested sales (including the Grand Gulf Sales) were first discovered in the midst of another dispute. In that case, FERC held the contested sales to be outside the scope of that proceeding, spurring the Louisiana Commission to file the 2009 Complaint. *Louisiana Pub. Serv. Comm'n v. Entergy Corp.*, 129 FERC ¶ 61,205 at P 4 (citing *Louisiana Pub. Serv. Comm'n v. FERC*, 551 F.3d 1042 (D.C. Cir. 2008)).

The Louisiana Commission's last-ditch effort to label the characterization of the Grand Gulf Sales as Joint Account Sales as a collateral attack on prior FERC orders fails for the same reason that the argument alleging a change of position did: there was no prior determination about whether the Grand Gulf Sales violated Section 30.03 of the System Agreement.

### III.    The 2019 Complaint

As suggested in FERC's orders that refused to address the Grand Gulf Sales along with the opportunity sales made by Entergy Arkansas, the Louisiana Commission filed the 2019 Complaint alleging that the Grand Gulf Sales—despite being accounted for as Joint Account Sales—still violated the System Agreement.  Entergy Services responded and moved to dismiss the 2019 Complaint on the ground that it was foreclosed by the 2015 Settlement Agreement entered into by the Louisiana Commission when the pact between the Entergy utilities was dissolved.

FERC granted the motion and denied the 2019 Complaint. This effectively closed the door on the Louisiana Commission ever recovering damages for the alleged injury incurred from the Grand Gulf Sales.  The Louisiana Commission argues that FERC misinterpreted the Settlement Agreement and that the order denying the complaint should be vacated so that the Louisiana Commission may pursue a remedy.

The portions of the Settlement Agreement that are relevant to this case are those which govern claims brought by members of the Settlement Agreement under the now-terminated System Agreement.   Section G(1) provides that the parties of the Settlement Agreement "irrevocably waive and release" any claims against other settling parties "arising out of or relating to the System Agreement that are not filed and served upon the applicable parties as of the filing of the Settlement Agreement . . . ."  Then, in the midst of language regarding the obligation of parties to roughly equalize production costs under the System Agreement, Section G(2) clarifies that the "Settlement Agreement shall have no effect on cost allocation disputes affecting costs incurred prior to January 1, 2016."

The Louisiana Commission first contends that Section G(1) does not foreclose the 2019 Complaint because it only applies to claims that were "not filed and served upon the applicable parties as of the filing of the Settlement Agreement . . . ." According to the Louisiana Commission, it preserved the allegations in the 2019 Complaint via the 2009 Complaint (which was filed prior to the 2015 Settlement Agreement) because the two "alleged the same substantive violation." But this is not so.

The 2009 Complaint focused on sales of electricity by Entergy Arkansas that allegedly "violated the provision of the System Agreement that prohibits sales to third parties by individual companies absent an offer of a Right-of-First-Refusal to the other companies." The 2019 Complaint, on the other hand, focused on sales made "for the benefit of Entergy Arkansas" that allegedly violated the terms of the System Agreement governing the reimbursement for energy used to supply sales to others for the joint account of the Entergy Operating Companies.

FERC reasonably concluded that the two complaints alleged different violations of the System Agreement and therefore that the 2009 Complaint did not preserve the allegations in the 2019 Complaint for purposes of the 2015 Settlement Agreement waiver provisions.

The Louisiana Commission then narrows in on a single sentence of Section G(2) to rescue the 2019 Complaint. "This Settlement Agreement shall have no effect on cost allocation disputes affecting costs incurred prior to January 1, 2016." Read in isolation, this sentence does support the Louisiana Commission's argument that the Settlement Agreement does not bar the 2019 Complaint. But FERC does not review excerpts in isolation; rather, it "must review the entire

agreement and particular words should be considered, not as if isolated from the context, but in light of the obligations as a whole and the intention of the parties as manifested therein." *Xcel Energy Servs. Inc. & N. States Power Co., a Wisc. Corp. v. American Transmission Co.*, 140 FERC ¶ 61,058 at P 60 (2012).

When read in its entirety, Section G(2) regards the obligation to roughly equalize production costs under the System Agreement. Since 2007, if an individual utility's "production costs deviate more than 11 percent above or below the Entergy System's average on an annual basis, the [utilities] with the lower costs will make payments . . . to the ones with higher costs such that their overall costs return to rough equalization." *Louisiana Pub. Serv. Comm'n v. FERC*, 866 F.3d 426, 427 (D.C. Cir. 2017). This remedy was affirmed in *Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378 (D.C. Cir. 2008). FERC reasonably concluded that Section G(2) "pertains to the bandwidth calculation and the sentence cited by the Louisiana Commission clarifies that the Settling Parties would not be precluded from pursuing cost allocation disputes related to a final bandwidth calculation compliance filing that had not yet been submitted at the time of the 2015 Settlement Agreement."

Neither Section G(1) or G(2) saves the allegations in the 2019 Complaint from being barred by the 2015 Settlement Agreement. And finally, the Louisiana Commission's argument that FERC should have denied the motion to deny the 2019 Complaint as to Entergy Arkansas because it was not a party to the 2015 Settlement Agreement is unpersuasive. The Louisiana Commission asserts that even if the other named parties are protected by the Settlement Agreement, damages could be collected from Entergy Arkansas, which withdrew from the Entergy System without ever entering the Settlement

Agreement. As FERC explained, the core issue of the 2019 Complaint was not the actions of Entergy Arkansas, but the accounting methods used by Entergy Services, LLC, which is a party to the 2015 Settlement Agreement. FERC's reasoning to dismiss the 2019 Complaint as to all parties was not arbitrary and capricious when the violations were allegedly committed by a party to the Settlement Agreement, even if a portion of the damages would have been paid out by a non-party.

The Louisiana Commission's last attempts to argue estoppel and mutual mistake similarly fail. To prevail on a claim of equitable estoppel, a party must show that there was a "false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party, and reliance, as well as a showing of an injustice and lack of undue damage to the public interest." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (cleaned up). The Louisiana Commission argues that it relied upon Entergy's representations about the Grand Gulf Sales when it agreed to the waiver provisions of the Settlement Agreement.

Regardless of the Louisiana Commission's reasons for entering the Settlement Agreement, FERC correctly found that the Louisiana Commission never alleged that any representations made by Entergy in 2010 were made for the purpose of inducing the Louisiana Commission to enter the 2015 Settlement Agreement. *Order Addressing Arguments Raised on Reh'g*, 172 FERC ¶ 61,056 at P 35 (July 16, 2020).

Under the doctrine of judicial estoppel, when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has

acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). FERC correctly focused on the fact that, while Entergy may have made prior representations that the Grand Gulf Sales were Opportunity Sales, Entergy never succeeded in inducing FERC to find the same. 172 FERC ¶ 61,056 at P 33 (2020).

Under the doctrine of mutual mistake, "a contract may be rescinded if the contracting parties entertained a material mistake of fact that went to the heart of the bargain." *Harbor Ins. Co. v. Stokes*, 45 F.3d 499, 501 (D.C. Cir. 1995) (quoting *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 635 (D.C. Cir. 1989)). FERC contends that this argument was waived below because it was not raised until the Louisiana Commission's petition for rehearing. Even if the Louisiana Commission's mutual mistake argument was not waived, FERC reasonably determined on the merits that the Louisiana Commission presented no evidence that any initial shared impression about the Grand Gulf Sales was a material fact that formed the basis of the 2015 Settlement Agreement.

## IV.    Conclusion

For the reasons set forth above, the Louisiana Commission's petitions for review are denied.